**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Mark Starling, M.D., <br><br> Plaintiff, <br><br> v. <br><br> Banner Health, an Arizona corporation; Marjorie Bessel, M.D.; Julie Nunley; Cindy Helmich; Lori Davis-Hill; and Joseph Chatham, M.D., <br><br> Defendants. | No. CV-16-00708-PHX-NVW <br><br> **AMENDED (to correct caption) ORDER** |

Before the Court is Defendant Banner Health's Motion for Reconsideration of the Court's January 12, 2018 Ruling (Doc. 301). For the following reasons, the motion will be denied.

**I.    LEGAL STANDARD**

"The Court will ordinarily deny a motion for reconsideration of an Order absent a showing of manifest error or a showing of new facts or legal authority that could not have been brought to its attention earlier with reasonable diligence." LRCiv 7.2(g)(1). "Any such motion shall point out with specificity the matters that the movant believes were overlooked or misapprehended by the Court." *Id*. "No motion for reconsideration of an Order may repeat any oral or written argument made by the movant in support of or in opposition to the motion that resulted in the Order." *Id*.

## II. ANALYSIS

Defendant Banner Health ("Banner") urges reconsideration of the Court's Order regarding its Motion for Summary Judgment ("Order") (Doc. 296). It presents almost exclusively arguments contained in its previous motions. That alone is grounds for denying its motion. *See* LRCiv 7.2(g)(1). Nevertheless, the Court addresses the arguments in more detail below.

### A. Count I: ADEA Termination

Banner argues that the Court "overlooked material facts" and committed "a clear error of law" with respect to Count I. (Doc. 301 at 6.) It is wrong for several reasons.

Banner ignores *Douglas v. Anderson*, 656 F.2d 528 (9th Cir. 1981), which the Court explicitly considered in its Order. (*See* Doc. 296 at 14.) There is no *per se* rule that a replacement must be a certain number of years younger than the plaintiff in order for the plaintiff to meet his *prima facie* burden. "If the replacement is only slightly younger than the plaintiff, then it is *less likely* that an inference of discrimination can be drawn. However, replacement by *even an older employee* will not necessarily foreclose prima facie proof if other direct or circumstantial evidence supports an inference of discrimination." *Id.* at 533 (emphases added). It is a case-by-case determination. As the Ninth Circuit has explained, "In each case the trier must determine whether the evidence identifies age as the likely reason for the discharge." *Id*. And the "requisite degree of proof necessary to establish a prima facie case for . . . ADEA claims on summary judgment is minimal and does not even need to rise to the level of a preponderance of the evidence." *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 888-89 (9th Cir. 1994). In *Douglas*, the court found the plaintiff met his *prima facie* burden when his replacement was a mere five years younger but the plaintiff had supplied substantial evidence of satisfactory job performance. 656 F.2d at 533. For the reasons explained in the Order, Starling met his *prima facie* case under *Douglas*.

In addition, Banner cites *Ferlise v. JP Morgan Chase Bank, Nat'l Ass'n*, No. CV-11-01783-PHX-ROS, 2013 WL 5291143 (D. Ariz. Sept. 3, 2013), for the proposition that

cases in most circuits have demonstrated that a difference of less than ten years is not significant. (Doc. 301 at 3.) But there the court also noted both that the "Ninth Circuit has not decided what qualifies as 'substantially younger'" and that "courts routinely require an age difference of at least six years." 2013 WL 5291143, at *3. Starling's replacement was seven years younger than he, and consistent *Douglas*, there was more than enough evidence to meet the *prima facie* burden.

Banner also argues that the Court improperly focused on "indicia of impairment," rather than Banner's Testing Policy, which defines impairment. (Doc. 301 at 4-5 (emphasis removed).) First, whether Starling actually appeared to be impaired is an important issue for the jury with respect to deciding whether Banner had good reason to test him. More importantly, Banner's Testing Policy deems an employee "impaired" if his BAC meets or exceeds 0.02—but only if the employee is *working*. Despite Banner's contrary assertion, there is evidence to suggest that Starling was not "working" at the Holiday Party. For example, the reminder email was specifically styled as a request; Starling had not attended in previous years and was never disciplined for it; and other Banner officers who were deposed could not say whether it was required. A reasonable juror could conclude that Banner's Testing Policy did not apply under the circumstances.

Banner makes much of the fact that alcohol was not being served at *this* event—the Holiday Party. That is irrelevant. What matters is whether Starling was working and could be deemed impaired under Banner's Testing Policy. It is crucial to understand what it means to be "working." If other employees were "working," drinking, and not being tested at events where Banner *did* serve alcohol, events designed for similar morale-boosting purposes, then Banner may have arbitrarily enforced its Testing Policy.

It is disingenuous for Banner to assert that Starling "produced no evidence identifying" other employees he believed were impaired at work but who were not subject to Banner's Testing Policy. (Doc. 301 at 4.) Starling does not need to point to specific examples of employees who were tested, blew a 0.02 or above, and were not fired. He did what he needed to do: he showed that other, similarly situated employees

drank at official Banner events and were not tested. Given Starling's account of his superiors' hostility toward him, a reasonable juror could conclude that they exhibited discriminatory animus in deciding to test him in a primarily social setting and to fire him for the results.

Finally, Banner makes this perplexing claim: "Under [the Court's] reasoning, Banner could never have any rule barring a physician from operating with an elevated BAC if it also chose to serve alcohol at an employee retreat or awards ceremony." (Doc. 301 at 5.) Nothing in the Court's Order justifies such a result. The entire point is that it is unclear whether Starling was "working"; if he was "operating," there would be no dispute that he was working. In fact, in ruling in Banner's favor on Starling's defamation claim, the Court expressly noted that an employer should have the right to fire and report a physician who was inebriated only once while performing surgery. (Doc. 296 at 27.)

### B. Count II: ADEA Retaliation

Banner argues that, in denying summary judgment on Count II, the Court relied on facts not in the record and overlooked material facts. (Doc. 301 at 6.) Not so.

Banner again contends that there is "no evidence" that it selectively enforced its Testing Policy. For the reasons explained above and in the Order, the Court rejects this argument.

Banner also emphasizes the fact that Starling supposedly sent notice of intent to sue in June of 2015. (It skirts over the fact that the reason he sent the notice was because, he says, he found Bessel and Nunley aggressive and threatening.) Banner suggests that too much time had passed between the June 2015 letter from Starling's attorney and the termination to properly infer causation. Yet the June 2015 letter, as Banner quotes it in its Motion for Reconsideration, threatened litigation "should the parties be unable to resolve this dispute." (Doc. 301 at 7.) In the intervening months, the parties did attempt to resolve the dispute, as their correspondence in the record indicates. (*See* Doc. 267, Exs. 18-20.) The November 2015 notice of intent to sue was just that—not a threat, but

an announcement. The Court did not "overlook" the June 2015 letter; it concluded that the two letters were plainly different.

* * *

Underlying all of this is the touchstone of Ninth Circuit ADEA law, a touchstone that must guide the Court:

> A plaintiff alleging employment discrimination need produce very little evidence in order to overcome an employer's motion for summary judgment. This is because the ultimate question is one that can only be resolved through a searching inquiry—one that is most appropriately conducted by a factfinder, upon a full record. In evaluating motions for summary judgment in the context of employment discrimination, we have emphasized the importance of zealously guarding an employee's right to a full trial, since discrimination claims are frequently difficult to prove without a full airing of the evidence and an opportunity to evaluate the credibility of the witnesses.

*Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008) (internal quotation marks and citations omitted). Because so much of this case turns on the credibility of the witnesses, granting summary judgment on Counts I and II would have plainly been inappropriate.

IT IS THEREFORE ORDERED that Banner Health's Motion for Reconsideration of the Court's January 12, 2018 Ruling (Doc. 301) is denied.

Dated this 29th day of January, 2018.

_____
Neil V. Wake
Senior United States District Judge